UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| MP Nexlevel, LLC,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>Michael Kouba and<br>TH Construction,<br><br>　　　　　　　Defendants. | Court File No.:<br>_____<br><br><br><br>**COMPLAINT** |

Plaintiff for its claim for relief against Defendants, state and allege as follows:

## PARTIES

1. Plaintiff, MP Nexlevel, LLC ("MP Nexlevel") is a Minnesota limited liability company organized and existing under the laws of the State of Minnesota with its registered office address of 500 County Road East, Maple Lake, MN 55358.

2. Defendant, TH Construction Company is a Nebraska company organized and existing under the laws of Nebraska, with its registered office address of 13632 South 220th Street, Gretna, NE 68028.

3. Defendant, Michael Kouba ("Kouba") is a former employee of MP Nexlevel and currently resides at the address of 2411 Sandy Lane, Bellevue, NE 68123.

## VENUE AND JURISDICTION

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 (a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of

1

interest and costs, in that the monetary value to the Plaintiff of the injunctive relief and the money damages that the Plaintiff seeks to recover from Defendants exceeds $75,000, and because the controversy is between citizens of different states. Jurisdiction is also proper because Defendants TH Construction and Kouba have consented in agreements with Plaintiff to the jurisdiction of this Court.

5. Venue is proper in this district under 28 U.S.C. § 1391 (a) because the Plaintiff is a resident of the State of Minnesota and because the Defendants TH Construction and Kouba have consented in agreements with Plaintiff to venue being proper in this Court.

6. Venue and Jurisdiction are also proper as this is an action to enforce terms of a subcontractor and an employment agreement that were entered into by Plaintiff, a Minnesota Corporation and the Defendants.

## FACTS

**TH Construction agreed to not disclose confidential information of MP Nexlevel, agreed to not solicit employees of MP Nexlevel, agrees Minnesota law controls this action, and agrees venue and jurisdiction are proper in this Court.**

7. On or about January 1, 2013, MP Nexlevel and Windstream Supply, LLC. ("Windstream") entered into a Master Contract Agreement for Network Services ("Windstream Agreement"), which is a three year wireline construction service contract wherein MP Nexlevel performed wireline OSP construction services for Windstream in Minnesota, Iowa, Missouri and Nebraska. Services under this Windstream Agreement were performed on an annual basis and started in 2013 in Nebraska ("Windstream Project"). In order for MP Nexlevel to complete their work in the Windstream Project,

2

MP Nexlevel entered into a Standard Subcontract Agreement with TH Construction ("MP Nexlevel/TH Construction Agreement"), which is attached hereto as Exhibit 1.

8.  Under the terms of the MP Nexlevel/TH Construction Agreement, paragraph 3.3, TH Construction agrees that Minnesota law is the governing law for disputes and that in any dispute involving multiple parties, MP Nexlevel has the option of addressing the dispute in this Court.

9.  In paragraph 2.13 of the MP Nexlevel/TH Construction Agreement, TH Construction agrees it will not disclose any confidential information of MP Nexlevel and in paragraph 2.14 agrees that it will not solicit any employees of MP Nexlevel.

**Kouba agrees that he will not disclose confidential information and that he will not compete with MP Nexlevel.**

10.  MP Nexlevel hired Kouba on October 24, 2011.  Kouba worked as a Project Manager for MP Nexlevel, including construction service work for MP Nexlevel under the Windstream Agreement.

11.  After working for MP Nexlevel in a different capacity, MP Nexlevel and Kouba entered into the "MP Nexlevel Employment Agreement for Existing Employees" on or about December 14, 2012 ("MP Nexlevel/Kouba Agreement") attached hereto as Exhibit 2.  This allowed Kouba to work on the Windstream Project.

12.  In performance of his duties under the Windstream Project, Kouba obtained trade secret and confidential pricing information of MP Nexlevel as these terms are described in the MP Nexlevel/Kouba Agreement.

13. Under the terms of the MP Nexlevel/Kouba Agreement, Kouba agrees in paragraph 2 that he will keep trade secret and confidential information of MP Nexlevel secret; agrees in paragraph 1A that financial and pricing information of MP Nexlevel are confidential information; agrees that he will not disclose such confidential information; agrees in paragraph 4 that he will not compete with MP Nexlevel during the term of his employment or for a 12 month period after his employment; and he agrees in paragraphs 5 and 6 that if he is found to be in violation of the terms of the MP Nexlevel/Kouba Agreement, that MP Nexlevel is entitled to all remedies including, but not limited to injunctive relief, monetary damages, attorney fees and costs. Kouba also agrees in paragraph 8, that Minnesota law will govern the interpretation of the MP Nexlevel/Kouba Agreement, and that he consents to venue and jurisdiction in the Minnesota courts.

**Kouba managed the material inventory for the Windstream Project and caused an inventory shortage of approximately $433,000 worth of construction material, including 47 reels of duct, 26 reels of fiber, and 32,000 ft. of copper wire.**

14. In his role as project manager for MP Nexlevel on the Windstream Project, one of the areas of responsibility for Kouba was managing the inventory of the construction material and supplies of MP Nexlevel used in the project.

15. The main construction material used in the Windstream project was fiber, duct and copper which were ordered by MP Nexlevel from Windstream. This fiber cable and duct came in large wooden reels, with each reel typically containing 10,000 - 20,000 feet of fiber at a cost of over $5,200/reel. The duct came on large metal reels containing 7,500 feet of duct per reel and the fiber came in various size reels.

16. For the Windstream Project, MP Nexlevel ordered the reels of material from Windstream and kept the material on their property at 601 NW 27th Street, Lincoln, Nebraska. Then, subcontractors like TH Construction came onto MP Nexlevel's Nebraska property and obtained the proper amount of material they needed to use in their work for MP Nexlevel in the Windstream Project. MP determined how much fiber, duct and copper were required for their work and then billed Windstream for this amount.

17. In February 2015, after being told in December 2014 by MP Nexlevel senior management that he was required to track the material given to subs, Kouba was again asked by one of his subordinate workers in the Nebraska office about tracking the inventory of the reels of fiber and duct used in the Windstream Project. Kouba replied that there was "no way to track" the fiber and duct inventory and to "not do this". The subordinate employee attempted to install a sign in/out procedure for the material, but Kouba did not support such an inventory tracking process. Later, in 2015, Kouba was asked by a subordinate employee about reels of fiber that were missing from MP Nexlevel's Nebraska property and Kouba responded "not to worry about it" and that he "would take care of it".

18. In spite of his duty to properly manage the material inventory for the Windstream project, by the time he resigned from employment with MP Nexlevel on or about December 16, 2015, MP Nexlevel had lost at least 26 reels of fiber, 47 reels of duct, and 32,000 feet of various copper fiber, costing MP Nexlevel in excess of $433,000 in unaccounted for material.

5

**TH Construction used MP Nexlevel confidential information and material and successfully bid on the new three year services agreement with Windstream, causing MP to lose their bid for the agreement.**

19. Windstream requested proposals for the completion of a new three year services project in Nebraska starting on January 1, 2016. MP Nexlevel bid on this project and surprisingly, so did TH Construction.

20. Unbeknownst to MP Nexlevel, without claim of right or authority from MP Nexlevel and without a proper purpose, on May 4, 2015, at 7:27 a.m., Kouba sent by email to Joe Giesler and Tim Huttman of TH Construction a twelve page "construction unit specification" list of MP Nexlevel. Kouba added the confidential pricing used by MP Nexlevel for units on this list that he sent to TH Construction.

21. Also, unbeknownst to MP Nexlevel, on July 2, 2015, at 8:47 a.m., without claim of right or authority from MP Nexlevel and without a proper purpose, Kouba sent by email to Justin Rohr, Vice President of TH Construction, MP Nexlevel's confidential price list, which was organized in an Excel spreadsheet and which contained 449 confidential prices of the construction services MP Nexlevel charged Windstream in the performance of the Windstream Project.

22. Unbeknownst to MP Nexlevel, on or about December 2014, Kouba sent confidential employee benefit information in an email to Rohr and Huttman of TH Construction about MP Nexlevel's employee benefits package.

23. In November 2015, there was an alleged theft that occurred on MP Nexlevel's property in which it was reported that MP Nexlevel employees, Kyle Loehr (aerial coordinator/crew supervisor), Cory Staab (crew foreman), Nick Ruskamp

6

(lineman), Mike Zoucha (lineman), reported that they had their tools taken from MP Nexlevel property. As a result of this report, these four persons were all provided new tools by MP Nexlevel. At the time, Kouba stated "why are we buying them new tools they are all leaving to TH anyway".

24. On January 6, 2016, Loehr, Staab, Ruskamp and Zoucha all resigned from MP Nexlevel and immediately began working for TH Construction. Taylor May an administrative assistant for MP Nexlevel did not return from her pregnancy leave that she started on October 28, 2015, and now works for TH Construction.

25. In addition to these four former MP Nexlevel employees working for TH Construction, on December 14, 2014, Kouba resigned from working at MP Nexlevel and is now working for TH Construction.

**TH Construction was warned to not solicit MP Nexlevel employees and Kouba was warned to not compete with MP Nexlevel; in spite of these warnings TH Construction hired at least 6 former employees of MP Nexlevel, including Kouba.**

26. In correspondence dated November 24, 2015, MP Nexlevel congratulated TH Construction for winning the new three year Windstream services agreement, but reiterated to TH Construction that were bound by the terms of the MP Nexlevel/TH Construction Agreement, which prohibited TH Construction from soliciting MP Nexlevel employees. (See correspondence from Paul Decker, Regional Vice President, MP Nexlevel to Tim Huttman, TH Construction dated November 23, 2015, attached hereto as Exhibit 3).

7

27. In spite of this written warning, TH Construction did solicit the MP Nexlevel employees to quit working for MP Nexlevel and begin working for TH Construction.

28. In correspondence dated, December 18, 2015, MP Nexlevel reminded Kouba that he signed a non-compete agreement prohibiting from competing with MP Nexlevel and further reminded him of the non-solicitation provisions of the MP Nexlevel/Kouba Agreement. (See correspondence from Judy Sand, Human Resource Director, MP Nexlevel to Michael Kouba dated December 18, 2015, attached hereto as Exhibit 4).

29. In spite of this written warning, Kouba is working for TH Construction in violation of the MP Nexlevel/Kouba Agreement.

**As a result of its improper and unlawful actions, TH Construction was awarded the new three year services agreement with Windstream using MP Nexlevel confidential information.**

30. TH Construction obtained MP Nexlevel pricing from Kouba and had this knowledge when they made their bid to Windstream to obtain the new three year services agreement starting on January 1. 2016.

31. TH Construction was awarded the new three year services agreement with Windstream starting on January 1, 2016, that MP Nexlevel had bid on and lost.

32. On January 21, 2016, TH Construction had on its property at 7750 N. 56th Street, Lincoln, Nebraska reels of fiber and duct that they obtained from MP Nexlevel without paying for the same. When TH Construction was asked about possessing the MP Nexlevel construction material on the same date, Rohr and TH Construction denied it.

8

33.     MP Nexlevel purchased a Maxi-Sneaker and trailer in 2004. Kouba told an MP Nexlevel employee that because he did not get a bonus from MP Nexlevel, he sold the Maxi-Sneaker and trailer to TH Construction keeping the money for himself without authority, claim of right or permission, from MP Nexlevel.

## COUNT I – BREACH OF CONTRACT
### (Against Kouba and TH Construction)

34.     MP Nexlevel restates and realleges all paragraphs above as if fully set forth herein.

35.     TH Construction and Kouba each entered into a separate legally binding agreement with MP Nexlevel. The TH Construction agreement is the MP Nexlevel/TH Construction Agreement (Exhibit 1) attached to the Complaint and the Kouba agreement is the MP Nexlevel/Kouba Agreement (Exhibit 2) attached to the Complaint.

36.     TH Construction breached the MP Nexlevel/TH Construction Agreement by actions including, but not limited to using confidential pricing information of MP Nexlevel for their own purposes and by soliciting MP Nexlevel employees to work for them.

37.     Kouba breached the MP Nexlevel/Kouba Agreement by actions including, but not limited to sharing confidential pricing information of MP Nexlevel with TH Construction and by working for TH Construction in violation of the non-compete restriction in the MP Nexlevel/Kouba Agreement.

38. Kouba's and TH Construction's breaches have caused immediate and irreparable harm to MP Nexlevel, as well as monetary damages currently exceeding $75,000, as set forth above, plus attorney fees.

## COUNT II – CONVERSION
### (Against Kouba and TH Construction)

39. MP Nexlevel restates and realleges all paragraphs above as if fully set forth herein.

40. MP Nexlevel has a property interest in the Confidential Information taken by Kouba and TH Construction and in the maintenance of the confidentiality of that Confidential Information.

41. MP Nexlevel has a property interest in all of the unpaid for reels of fiber, duct, and copper construction material taken by Kouba and TH Construction.

42. Kouba and TH Construction willfully interfered with and converted MP Nexlevel's property interest in its Confidential Information and the maintenance of the confidentiality of that Confidential Information; and have willfully interfered with and converted MP Nexlevel's property interest in the reels of fiber, duct, and copper construction material.

43. Kouba and TH Construction have no justification for interfering with and converting MP Nexlevel's property interest in its Confidential Information, or its fiber, duct, and copper construction material.

44. Kouba and TH Construction's interference and conversion have deprived MP Nexlevel of the use and possession of its Confidential Information and the

maintenance of the confidential nature of that information; and the use and possession of the fiber, duct, and copper construction material.

45.   This interference and conversion by Kouba and TH Construction have caused immediate and irreparable harm to MP Nexlevel, as well as monetary damages currently exceeding $75,000.

## COUNT III – REPLEVIN
### (Against Kouba and TH Construction)

46.   MP Nexlevel restates and realleges all paragraphs above as if fully set forth herein.

47.   Kouba and TH Construction took MP Nexlevel's Confidential Information, took and did not pay for reels of fiber, duct, and copper construction material and thereby converted the property of MP Nexlevel.

48.   MP Nexlevel demands that all copies of its Confidential Information be replevied and returned immediately and all unpaid and unused reels of fiber, duct, and copper construction material be returned immediately in whatever form they may exist.

## COUNT IV – BREACH OF FIDUCIARY DUTY/DUTY OF LOYALTY
### (Against Kouba and TH Construction)

49.   The MP Nexlevel restates and realleges all paragraphs above as if fully set forth herein.

50.   Kouba owed MP Nexlevel fiduciary duties and duties of undivided loyalty while employed by MP Nexlevel.

51.   Kouba breached those duties by taking MP Nexlevel's Confidential Information during his employment, and by allowing TH Construction to take the reels of

fiber, duct and copper construction material from MP Nexlevel without paying for the same.

52. By allowing TH Construction to have MP Nexlevel's Confidential Information, Kouba breached his fiduciary duty to not disclose Confidential Information and by providing the construction material to TH Construction without charge, Kouba breached his duty of loyalty to MP Nexlevel.

53. This breach has caused immediate and irreparable harm to MP Nexlevel, as well as monetary damages currently exceeding $75,000.

### COUNT V – MISAPPROPRIATION OF TRADE SECRETS AND CONFIDENTIAL INFORMATION, MINN. STAT. § 325C.01, et seq.
### (Against Kouba and TH Construction)

54. MP Nexlevel restates and realleges all paragraphs above as if fully set forth herein.

55. MP Nexlevel's confidential and proprietary information (including the Confidential Information listed above and customer information) derives substantial, independent economic value from not being generally known to the public or to MP Nexlevel's competitors, who could obtain economic value from the information. MP Nexlevel expended substantial financial and human resources to develop this information, which cannot be easily acquired or duplicated by others. Further, MP Nexlevel has taken substantial efforts to maintain the secrecy of its confidential and proprietary information (including the Confidential Information listed above and customer information), which has included restricting access to such information, designating such information as Confidential Information, and requiring employees to

abide by confidentiality obligations. Thus, MP Nexlevel's confidential and proprietary information (including the Confidential Information listed above and customer information) constitutes trade secrets under the Minnesota Uniform Trade Secrets Act, Minn. Stat. § 325C.01, et seq.

56.   Kouba and TH Construction have misappropriated MP Nexlevel's trade secrets.

57.   This misappropriation has caused immediate and irreparable harm to MP Nexlevel, as well as monetary damages currently exceeding $75,000.

## COUNT VI – TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE.
### (Against Kouba and TH Construction)

58.   MP Nexlevel restates and realleges all paragraphs above as if fully set forth herein.

59.   MP Nexlevel had a contractual relationship with Windstream from 2013 – 2015 under the Windstream Agreement and MP Nexlevel bid on the new three year 2016 services agreement with Windstream. TH Construction was aware of the Windstream Agreement as it was a subcontractor for MP Nexlevel in the performance by MP Nexlevel for the Windstream Project and knew that MP Nexlevel was submitting a bid for the new three year 2016 services agreement with Windstream.

60.   TH Construction used its relationship with MP Nexlevel and Kouba to gain access to MP Nexlevel's confidential pricing and other related Confidential Information and used that Confidential Information to unfairly and unlawfully interfere and compete

against MP Nexlevel to bid on the 2016 Windstream construction services contract for TH Construction's own benefit.

61.     TH Construction had no right or legitimate business purpose to obtain this confidential pricing information of MP Nexlevel and no right or legitimate business purpose to use such Confidential Information of MP Nexlevel other than interfere with MP Nexlevel's prospective business advantage with Windstream and to use the Confidential Information for its own benefit to bid on the 2016 Windstream construction services contract.

62.     TH Construction interfered with MP Nexlevel's prospective business advantage with Windstream causing MP Nexlevel to not be awarded the 2016 Windstream construction services contract and causing TH Construction to be awarded the 2016 Windstream construction services contract.

63.     This tortious interference with a prospective business advantage by Kouba and TH Construction has caused immediate and irreparable harm to MP Nexlevel, as well as monetary damages currently exceeding $75,000.

### COUNT VII – TORTIOUS INTERFERENCE WITH MP NEXLEVEL'S EMPLOYMENT AGREEMENT WITH KOUBA
### (Against TH Construction)

64.     MP Nexlevel restates and realleges all paragraphs above as if fully set forth herein.

65.     TH Construction agreed in the MP Nexlevel/TH Construction Agreement that it would not solicit, employ or work with MP Nexlevel employees.

66. TH Construction knew or should have known that Kouba entered into an employment agreement with MP Nexlevel in which Kouba agreed that he would not compete with MP Nexlevel.

67. TH Construction is a competitor of MP Nexlevel, especially in regard to the Windstream Project, as TH Construction was awarded the three year services contract from Windstream, which MP Nexlevel bid on and lost to TH Construction.

68. By employing Kouba to work with TH Construction, TH Construction is tortiously interfering with the MP Nexlevel/Kouba Agreement prohibiting Kouba from working competitively against MP Nexlevel.

69. This tortious interference by TH Construction has caused immediate and irreparable harm to MP Nexlevel, as well as monetary damages currently exceeding $75,000.

### COUNT VIII – UNFAIR COMPETITON
### (Against TH Construction)

70. MP Nexlevel restates and realleges all paragraphs above as if fully set forth herein.

71. MP Nexlevel and TH Construction competed against each other in bidding for the three year services agreement with Windstream starting on January 1, 2016.

72. TH Construction wrongfully and unlawfully used the confidential pricing information of MP Nexlevel to its competitive advantage and to the competitive disadvantage of MP Nexlevel.

73. As a result of their wrongful and unlawful actions, TH Construction has caused immediate and irreparable harm to MP Nexlevel, as well as monetary damages currently exceeding $75,000.

**WHEREFORE,** Plaintiff MP Nexlevel respectfully requests that this Court enter an Order against Defendants in favor of MP Nexlevel as follows:

1. Issue preliminary and permanent orders restraining and enjoining Kouba and TH Construction immediately from:

    a. violating the terms of paragraph 4A – 4D of the MP Nexlevel/Kouba Agreement within 365 days from the date of the Court's order;

    b. violating the terms of paragraph 2 and 3 of the MP Nexlevel/Kouba Agreement;

    c. violating the terms of paragraph 2.13 and 2.14 of the MP Nexlevel/TH Construction Agreement; and

    d. violating any other terms of their agreements.

2. Issue preliminary and permanent orders restraining and enjoining TH Construction from interfering with MP Nexlevel's contractual relationship with Kouba.

3. Issue preliminary and permanent orders restraining and enjoining TH Construction from employing Kyle Loehr, Cory Staab, Nick Ruskamp, Mike Zoucha, and Taylor May.

4. Enter a monetary judgment against TH Construction for all damages proximately caused by their wrongful actions, and for all exemplary damages, interest, reasonable attorney fees and costs agreed to under the MP/TH Construction Agreement and available under the law.

5. For further injunctive relief requiring Kouba and TH Construction to:

   a. Return immediately all of MP Nexlevel's Confidential Information, and unpaid for reels of fiber, duct and copper construction material;

   b. Not disclose or use MP Nexlevel's Confidential Information;

   c. Provide certification affidavits confirming that all Confidential Information has been returned and/or destroyed;

   d. Appear for full interviews with MP Nexlevel's Investigative Teams to allow for a determination as to the location of all Confidential Information and MP Nexlevel construction material that was not paid for;

   e. Appear for depositions on an expedited basis and provide other discovery on an expedited basis; and

   f. Present the referenced USB devices, and any computers, laptops, and/or devices that ever contained MP Nexlevel's Confidential Information to MP Nexlevel for review and analysis.

6. For such other relief as the Court deems just and appropriate, including costs, disbursements, interest and attorney fees expended by MP Nexlevel in pursuing injunctive relief.

7. A Jury Trial is demanded.

                                        MARTIN & SQUIRES, P.A.

Dated: March 17, 2016.                /s/Michael D. O'Neill
                                              Michael D. O'Neill (#19931X)
                                              Richard J. Savelkoul (#0296818)
                                              1st National Bank Building
                                              332 Minnesota Street, Suite #W2750
                                              St. Paul, MN 55101
                                              Telephone: (651) 767-3740
                                              Facsimile: (651) 228-9161
                                              E-mail: mdoneill@martinsquires.com